# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| RICHARD LYNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV621-080 |
| | ) | |
| TIMOTHY C. WARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER AND REPORT AND RECOMMENDATION

The Court previously recommended that *pro se* plaintiff Richard Lynn's 42 U.S.C. § 1983 complaint be dismissed because he failed to disclose his full litigation history and, when the Court investigated that history, it discovered that he had three prior "strikes," pursuant to 28 U.S.C. § 1915(g). *See generally* doc. 12. The Court considered whether any of the allegations in the Complaint were sufficient to establish that Lynn was in imminent danger. *See id.* at 6-7. The Court concluded that his allegation of a past assault was insufficient and "[h]is remaining allegations are simply too vague and general to except him from the three-strikes bar." *Id.* at 6. He has objected to the recommendation.

1

*See* doc. 13. He does not dispute that he has three § 1915(g) strikes, but contends that he has sufficiently alleged that he is in imminent danger. *Id.* Because the Court will permit Lynn's case to proceed pursuant to the imminent danger exception, the prior Report and Recommendation is **VACATED**. Doc. 12.

## I. Motion to Proceed *in Forma Pauperis*

Lynn's Objection alleges that the inmate who assaulted him, and against whom he pressed criminal charges, "was a ranking gang member." Doc. 13 at 2. He alleges that "he has receive[d] death threats and has a money reward put out by the inmate that assaulted him as well as members of his gang." *Id.* at 3. His contention that those allegations were contained in his Motion for Preliminary Injunction are not convincing. That Motion, discussed in more detail below, alleges only his generalized concern about retaliation. *See* doc. 2 at 2. As the Report and Recommendation explained, to the extent that the Complaint included allegations similar to those made explicitly in the Objection, Lynn also alleged that the prison had taken steps in response, albeit steps he viewed as insufficient. *See* doc. 12 at 6-7. The Objection, therefore, does not undermine the Court's analysis of the prior pleadings.

The supplemental allegations it contains, however, alter the Court's determination.

The Court is convinced that the allegations of ongoing death threats present at least a colorable claim of imminent danger. The Eleventh Circuit has held that an "allegation that [a prisoner] suffered a violent attack from a fellow inmate and continued to receive threats of further violence from that inmate's gang affiliates," supported application of the imminent-danger exception to the three-strikes bar. *Smith v. Dewberry*, 741 F. App'x 683, 686 (11th Cir. 2018). The Eleventh Circuit's opinion is not directly applicable as it involved allegations that the victim "was [only] temporarily transferred . . . and was transferred back to a housing unit with the gang members . . . ." *Id.* *Smith* also distinguished a case where a "prisoner failed to allege imminent danger because prison officials immediately placed him in administrative confinement . . . thereby eliminating the threat of further injury." *Id.* at 687 (parenthetical to citation of *Medbury v. Butler*, 185 F.3d 1189, 1191, 1193 (11th Cir. 1999). Lynn's pleadings indicate that, after the first assault, prison officials were responsive to his claims of danger. *See* doc. 12 at 6-

7. The facts Lynn alleges stand between those deemed sufficient to invoke the exception in *Smith* and those deemed insufficient in *Medbury*.

Given that Lynn has asserted a colorable argument that he qualifies the Court will permit his claims to proceed pursuant to § 1915(g)'s imminent-danger exception. His Motion for Leave to Proceed *in Forma Pauperis* is, therefore, **GRANTED**. Doc. 3. As Lynn should be aware from his prior cases, Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (PLRA), *all* prisoners, even those who are allowed to proceed IFP, must pay the full filing fee of $350.00. 28 U.S.C. § 1915(b)(1). Prisoner IFP litigants must pay an initial partial filing fee of 20 percent of the greater of the average monthly deposits to, or average monthly balance in, the prisoner's account for the 6-month period immediately preceding the filing of the Complaint. Prison officials are then required to collect the balance of the filing fee by deducting 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2).

Lynn must, therefore: (1) furnish the enclosed **Prisoner Trust Fund Account Statement** to the trust (financial) officer of each prison where he has been confined for the past six months. The trust officer

will complete and sign the form and return the form and supporting documents to plaintiff for submission to the Court. Two copies of the form are enclosed for this purpose. (2) Plaintiff must also sign and date the enclosed **Consent to Collection of Fees from Trust Account**. By signing this form, plaintiff gives his consent to the collection of the entire filing fee from his prison account in installments, in accordance with the provisions of the Prison Litigation Reform Act. Plaintiff must return both the **Prisoner Trust Account Statement** and the **Consent to Collection of Fees from Trust Account** to the Clerk within fourteen days of the date this Order is served. The Clerk of Court is **DIRECTED** to serve along with a copy of this Order (1) a Prisoner Trust Account Statement form, and (2) the Consent to Collection of Fees from Trust Account form. Lynn is **DIRECTED** to complete and return both forms no later than fourteen days from the service of this Order and Report and Recommendation.

## II.   Motion for Preliminary Injunction

Given that the Court will permit Lynn to proceed *in forma pauperis*, it must address his Motion for Preliminary Injunction. Doc. 2. His Motion requests an injunction requiring his transfer from Smith State

Prison to another prison "with a low record of violence." *Id.* at 5. He subsequently filed a second motion, captioned a "Motion to Compel," seeking the same relief. *See* doc. 10 at 1 (requesting an "order from this court to compel defendant to transfer petitioner to another state prison."). In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites"; namely (1) a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotation marks, alterations, and citations omitted). "[G]ranting or denying a . . . preliminary injunction rests within the discretion of the district court." *Hernandez v. Inch*, 2021 WL 5361086, at *1 (N.D. Fla. Oct. 8, 2021) (citing *Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (1997)).

The Court is skeptical, to say the least, that Lynn's motions satisfy the requirements for a preliminary injunction. Regardless of their

merit, however, it is clear that they are now moot. Lynn's motions both request transfer away from Smith State Prison. *See generally* docs. 2 & 10. His Objection to the prior Report and Recommendation, doc. 13, and his Motion to Amend, doc. 14, reveal that he has been transferred to Telfair State Prison. *See* doc. 13 at 3; doc. 14 at 1 ("On [F]eb. 24, 2022, Lynn was transfer[red] to Telfair [S]tate [P]rison . . . ."). It is well-established that "[t]he general rule is that a prisoner's transfer . . . moots his individual claim for declaratory and injunctive relief." *McKinnon v. Talladega Cnty.*, 745 F.2d 1360, 1363 (11th Cir. 1984); *see also Robbins v. Robertson*, 782 F. App'x 794, 800 (11th Cir. 2019). Even assuming that Lynn has similar issues with his current prison, *see, e.g.,* doc. 14 at 2, his request to be transferred away from Smith State Prison is clearly moot. His motions should, therefore, be **DENIED**. Docs. 2 & 10.

## III. Screening

Although the Court would ordinarily wait to ensure Lynn's compliance with the procedural requirements, discussed above, for proceeding *in forma pauperis*, it need not wait. *See, e.g., White v. Lemma*, 947 F.3d 1373, 1378-79 (11th Cir. 2020). The Court will, therefore, proceed to screen Lynn's Complaint, doc. 1, and consider his

requests to amend it, docs. 8 & 14.  Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff.  *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).  Conclusory allegations, however, fail.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).  As Graham is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed.  *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Lynn's Complaint implicates a claim that prison officials failed to protect him from attacks by other inmates.  He alleges that he was involved in an argument over money with another inmate in May 2021, and that the other inmate "threat[ened him] with bodily harm, if [he] did not pay [the other inmate] money that he claimed [Lynn] owed him . . . ."  *See* doc. 1 at 4.  He alleges that he informed a counselor, "Ms. Williams," about the threat.  *Id.*  She informed Lynn that she would move him to another dorm, but the move did not occur.  Lynn alleges that he was

assaulted by the other inmate five days after the original threat and the report to Williams. *Id.* at 5. After the assault, he was taken to a hospital, discharged the same day, "after surgery," and seen by a doctor at the prison. *Id.* He pressed charges against the perpetrator. *Id.* at 7-8.

Several months later, after Lynn had been notified that a prosecution had started, his cellmate threatened him with a knife. *See* doc. 1 at 9. He reported the threat to Warden McFallon, who along with another officer, searched the cell. *Id.* The search did not discovery any knife. *Id.* McFallon moved Lynn to another cell without a cellmate. A week later he was moved again into a cell with a cellmate. *Id.*

Lynn also alleges that more than a month after the threat from his former cellmate, he noticed that his cereal "appeared wet as if something had been po[u]red on [it]." Doc. 1 at 10. He informed a guard, who "smelled [the liquid on the cereal] and said that it was a chemical." *Id.* He speculates that "the liquid could have been intenti[on]ally placed in [his] food . . . ." *Id.*

Lynn's allegations implicate a claim that officials failed to protect him. "[P]rison officials have a duty . . . to protect prisoners from violence

9

at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotes and cites omitted). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. Merely negligent failure to protect an inmate from attack does not justify liability under § 1983. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). "Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

The Court is satisfied that Lynn has sufficiently alleged a failure-to-protect claim against Ms. Williams. He alleges that he informed her of the threat against him, that she recognized the risk was serious, and that she took no action at all. *See* doc. 1 at 4. He also alleges that he specifically informed Williams that he had "witness[ed] two prior and separate incidents . . . in which [the inmate who threatened him] assaults [sic] two other inmates and that he had stabbed at least one of the two . . . ." *Id*. Those allegations are sufficient, at least for screening

purposes, to warrant service of Lynn's Complaint upon Williams. Because, as discussed below, Lynn seeks to amend his Complaint, the Court will stay service upon Williams until the Amended Complaint is filed.[1]

To the extent that Lynn asserts that any other defendant failed to protect him, his Complaint fails to state a claim. He does allege that he informed several other defendants about potential threats, but in each case he alleges that the defendants in question took action. Even supposing that the actions they took were negligent or insufficient, they were not indifferent. *See, e.g., Brown*, 894 F.2d at 1537 ("Merely negligent failure to protect an inmate form attack does not justify liability under section 1983 . . . ."). As Lynn's Complaint expressly alleges, he contends that the cause of his assault was, at least in part, "negligence." Doc. 1 at 5.

---

[1] As discussed below, Lynn's Amended Complaint will supersede his original Complaint. Although the Court has determined that the allegations in the original Complaint are sufficient to state a claim against Williams, Lynn cannot rely upon the sufficiency of the original Complaint once he amends. *See, e.g., Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; *the original pleading is abandoned by the amendment, and is no longer part of the pleader's averments against his adversary.*" (emphasis added) (internal quotation marks and citation omitted)). He must, therefore, reallege his claim against Williams in his amended complaint.

Despite the defects in Lynn's claims against any defendant other than Williams, he is entitled to an opportunity to amend his Complaint. *See, e.g., Schmitt v. U.S. Off. Of Pers. Mgmt.*, 403 F. App'x 460, 462 (11th Cir. 2010) ("Where it appears that a more carefully drafted complaint might state a claim, the district court should give a *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it."). Lynn has also expressly moved for leave to amend his Complaint. *See* docs. 8 & 14. Since Lynn has not previously amended his Complaint, he is entitled to amend it once as a matter of right. *See* Fed. R. Civ. P. 15(a)(1). His motions for leave to amend are, therefore, **DISMISSED** as moot. Docs. 8 & 14. Lynn is **DIRECTED** to file his Amended Complaint no later than August 26, 2022.

### IV. Conclusion

In summary, the Court's prior Report and Recommendation is **VACATED**, doc. 12, and the Court **GRANTS** Lynn leave to proceed *in forma pauperis*, pursuant to § 1915(g)'s imminent-danger exception, doc. 3. He is **DIRECTED** to return the required forms no later than fourteen days from the date of service of this Order and Report and Recommendation. The Court recommends that his requests for

12

injunctive relief requiring his transfer from Smith State Prison be **DENIED** as moot. Docs. 2 & 10. He is **DIRECTED** to submit an Amended Complaint no later than August 26, 2022. Because he has an opportunity to amend his Complaint, his requests for leave to amend are **DISMISSED** as moot. Docs. 8 & 14. The Clerk is **DIRECTED** to include a copy of form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)) for Lynn's convenience. Lynn is advised that his amended complaint will supersede his original complaint and therefore must be complete in itself. *See Malowney v. Dec. Collection Deposit Grp.*, 193 F.3d 1342, 1345, 1345 n. 1 (11th Cir. 1999); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Lynn is further advised that failure to comply with any direction in this Order and Report and Recommendation may result in dismissal of his case for failing to obey a court order or failure to prosecute. *See* Fed. R. Civ. P. 41(b).

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document

should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 26th day of July, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA