# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

RICHARD LYNN )
)
    Plaintiff, )
)
v. )      CV621-080
)
TIMOTHY C. WARD, )
STAND SHEPHERD, )
BRIAN ADAMS, *et. al* )
)
    Defendants. )

## <u>REPORT AND RECOMMENDATION</u>

Proceeding *pro se* and *in forma pauperis*, Plaintiff Richard Lynn brings this 42 U.S.C. § 1983 action against Defendants concerning his confinement at Smith State Prison ("SSP") and Telfair State Prison ("Telfair").  Doc. 18 at 4; *see also* doc. 1.  Plaintiff's Motion to proceed *in forma pauperis* ("IFP") was initially denied and the Court recommended that his Complaint be dismissed because he failed to disclose his prior litigation to the Court so that it could ascertain whether Plaintiff was a so-called "three-striker" under the Prisoner Litigation Reform Act ("PLRA").  However, after Plaintiff established that he qualified for the imminent danger exception to the three-strike rule, the Court allowed

1

Plaintiff to proceed IFP, and he was directed to amend his Complaint, *see* doc. 16 at 5.   Because he is proceeding IFP, Plaintiff's Amended Complaint must be screened to protect potential defendants.   28 U.S.C. § 1915A; *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984); *Al-Amin v. Donald*, 165 F. App'x 733, 736 (11th Cir. 2006).

## I.   Background

Plaintiff alleges that on May 24, 2021, he warned Counselor T. Williams that he had been threatened by another inmate, who Plaintiff identifies as "Jordan."  Doc. 18 at 5.  Williams asked Plaintiff whether he felt that his life was in danger, to which Plaintiff responded affirmatively. *Id.* at 12.   Plaintiff also told Williams that he had witnessed Jordan stabbing another inmate and that he saw Officer Radar remove Jordan from the K-1 dorm where they were housed, but that Jordan was returned to K-1 only hours later.  *Id.*  Williams told Plaintiff that she would transfer Plaintiff out of K-1.  *Id.*  However, before that happened, on May 26, 2021, Jordan convinced Plaintiff to visit his cell to discuss a debt Plaintiff owed him.   *Id.*   Jordan told Plaintiff he knew that Plaintiff was attempting to transfer from K-1.   Jordan demanded immediate payment, and when Plaintiff could not pay, Jordan stabbed him in the

face and chased him around the dormitory until Plaintiff escaped with the help of an officer.  Plaintiff was airlifted to the hospital "due to the fact that [his] nose had been nearly severed from [his] face." *Id.* at 13.

After Plaintiff was released from the hospital, he was housed in a cell directly next to Jordan, despite the attack.  Doc. 18 at 13.  Jordan told Plaintiff that if he pressed criminal charges against him or any member of the gang to which Jordan belonged, Jordan would kill Plaintiff.  *Id.*  On May 28, 2021, Jordan and Plaintiff were both moved to dorm J-2.  *Id.* at 14.  Plaintiff wrote a letter to Defendant Ward's office a few days later.  He complained of the prior assaults committed by Jordan and claimed that prison staff were aware of the assaults but took no action towards Jordan.  Plaintiff also explained that he had received death threats because he intended to press charges.  *Id.*  He requested that Defendant Ward transfer him to another prison and to not post his new location on the Georgia Department of Corrections ("GDC.") website so that he could not be found by the gang.

Jordan also attempted to submit grievances, beginning on June 1, 2021.  His first grievance complained about the failure of Williams to remove him from danger in dorm K-1.  Doc. 18 at 15.  The counselor

rejected the grievance without explanation. *Id.* Plaintiff again attempted to grieve the situation by submitting it to another counselor, who also rejected it and told Plaintiff that he was required to give the grievance to Williams, the person he had attempted to report. When he tried to give the grievance to Williams, she rejected it as well. *Id.* Plaintiff alleges Williams unfairly rejected the grievance because it was about her. *Id.*

Soon after, though, an officer retrieved Plaintiff from his cell with the explanation that he had a medical appointment. Doc. 18 at 16. Plaintiff was taken to a back office where he met an investigator named Farllow. Farllow had a copy of the letter Plaintiff had written to Defendant Ward's office. Farllow asked Plaintiff if he wanted to press charges against Jordan, and Plaintiff said that he did. *Id.* Then, on July 10, Officer Bare visited Plaintiff's cell and again asked Plaintiff if he wanted to press charges against Jordan. Plaintiff's cellmate was present, and Plaintiff refused to answer in front of his cellmate. His cellmate purportedly said, "[i]t sounds like your [sic] about to snitch." *Id.* at 17. Unit Manager Cocks also visited Plaintiff's cell that day and was equally incautious regarding verbalizing Plaintiff's private allegations. His

4

cellmate then yelled, "hey I'm in the room with a fucking rat," and he became hostile. *Id.* The cellmate threatened to beat Plaintiff to death if he intended to press charges against a fellow gang member of the cellmate. Plaintiff asked Cocks and Jackson to be placed in a single-man cell, but he received no response. He filed more grievances. After his interactions with Cocks and his cellmate, Plaintiff was taken from his cell again to meet Farllow. Farllow purportedly was not aware of and did not request that Bare or Cocks speak to Plaintiff on his behalf, which made Plaintiff suspicious. Doc. 18 at 18. Plaintiff and Farllow argued, and Plaintiff filed a grievance against Farllow. Plaintiff's explanation is confusing, but he appears to assert that the grievance was intentionally voided by Williams. *Id.* at 19. Plaintiff appealed the grievance but was denied. *Id.*

In September of 2021, Plaintiff received a letter from the district attorney informing him that Jordan was being prosecuted for his assault and the "case had begun." *Id.* Around one week later, his cellmate threatened to stab Plaintiff if he did not pay his cellmate more than what Jordan had offered the cellmate to stab Plaintiff. Plaintiff promised to pay, but when Warden McFallon entered the dorm, Plaintiff began

banging on the door and screaming that his cellmate had a knife. *Id.* Although McFallon and L.T. Summers searched the cell, they did not find the knife. Plaintiff told McFallon that Jordan had offered reward money for a gang member to kill Plaintiff, and he showed him the letter from the district attorney's office. *Id.* at 19. Plaintiff asked to be placed in protective custody. *Id.* at 20. He was placed in a cell alone, but he was moved back into the cell with another inmate about a week later. *Id.* On October 23, 2021, Plaintiff became concerned that a chemical was added to his breakfast. Doc. 18 at 20. He showed L.T. Shellbe, who purportedly concurred, and then he filed a grievance. He believes it was placed there intentionally while the inmate orderly workers were unsupervised, and, presumably, on behalf of Jordan or his gang. *Id.*

In February 2022, after receiving no protection, Plaintiff signed up for vegan meals so that he would be transferred to another prison. *Id.* at 21. He was transferred to Telfair State Prison, a "level 5, close, security prison."[1] *Id.* A few months after being transferred, though, Plaintiff was stabbed and beaten again on April 16, 2022. His attackers accused him

---

[1] It appears that Lynn has been transferred to Wheeler Correctional Facility, *see* doc. 18 at 29. Lynn is reminded of his duty to keep the Court apprised of his address. *See* S.D. Ga. L. Civ. R. 11.1

of snitching on a gang member while he was at SSP, and Plaintiff alleges

that the attacker stated that members of the gang housed at SSP found

him on the GDC website and ordered gang members housed at Telfair to

attack him. *Id.* at 22. Plaintiff alleges that there was no officer in the

building or watching security cameras, and so the attack lasted for 15-20

minutes. When he returned from the hospital, he was interviewed but

refused to identify his attackers without the guarantee of a transfer

because he was afraid. *Id.*

Plaintiff requested protective custody by application, submitted to

Defendant Hall, soon after the attack, on April 22, 2022. Doc. 18 at 22.

Hall purportedly told Plaintiff she would forward the form to the Unit

Manager, Thomas, for consideration, but Plaintiff did not receive a

response. *Id.* Plaintiff then filed a grievance. He was later summoned

about his grievance, but when he arrived at Counselor Wilcox's office, it

appeared that someone had re-written his grievance without including

all the details. Wilcox was not sympathetic. *Id.* at 24. Afterwards,

Plaintiff was unable to submit a grievance regarding Wilcox or Hill,

whom he suspected had rewritten his prior grievance, because the two

accused him of lying and refused to accept them. Plaintiff does not know

7

the status of his grievances because he has not heard from officials, and thus he claims that the GDC has, "through maintaining an obsolete grievance system, . . . enabled GDC employees to hinder, manipulate, or dispose of prisoner's grievances. *Id.* Plaintiff appears to allege that such a policy constitutes deliberate indifference. *Id.*

Plaintiff's extensive allegations include failure to protect claims against Defendants T. Williams; Radar; Farllow, Adams, White, Thomas, and Ward, as well as claims about the deficient grievance policy against the GDC and Wilcox. Although he included Stand Shepherd as "Defendant No. 2" on the form Complaint provided to him, he does not make any factual allegations against Shepherd.

## II.   Legal Standard

The Court reviews Plaintiff's claim pursuant to 28 U.S.C. § 1915A to determine whether he has stated a colorable claim for relief under 42 U.S.C. § 1983. A complaint or any portion thereof may be dismissed if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. *See* 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). Because the Court applies Federal Rule of Civil Procedure 12(b)(6)

8

standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Lynn is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

## III.   Discussion

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotes and cites omitted). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Merely negligent failure to protect an inmate from attack does not justify liability under § 1983. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). A prison official violates the Eighth Amendment when he actually (subjectively) knows that an inmate is

facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner. *See Farmer,* 511 U.S. at 839. As with any other claim brought under § 1983, to succeed, the inmate must demonstrate a causal connection between the prison official's conduct and the Eighth Amendment violation. *See Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982); *see also LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993).

With regard to the subjective component of Plaintiff's Eighth Amendment claims, the Court in *Farmer* held that the prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a *question of fact* subject to demonstration in the usual ways, including inference from circumstantial evidence." *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 842 (quotation marks omitted)). "[O]fficials must possess enough details about a threat to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th

10

Cir. 2019) (citing *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015); *Brown*, 894 F.2d at 1537). "[T]he unfortunate reality is that 'threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.'" *Id.* (quoting *Prater v. Dahm*, 89 F.3d 538, 542 (8th Cir. 1996)). Thus, at the very least, Plaintiff must, at this stage, plead facts which indicate that the Defendants knew he faced an imminent threat from Jordan.

"The fundamental question in any deliberate-indifference case is whether the defendants exhibited 'a sufficiently culpable state of mind.'" *Swain v. Junior*, 961 F.3d 1276, 1287 (11th Cir. 2020) (quoting *Farmer*, 511 U.S. at 834.). In *Rodriguez*, a prisoner informed prison staff that he had renounced his gang membership; that members of former gang threatened to kill him when he returned to general population; pointed to the number of gang members in the compound; and specifically requested protection but was ignored. 508 F.3d 612. The Eleventh Circuit concluded that if true, these notifications were enough to place the defendants on notice of a substantial risk of serious harm. *Id.* at 620-22. As here, *Rodriguez* involved a series of threats that contained specific information that at least some of the named prison officials could have

11

reasonably inferred that there was a substantial, not merely possible, risk of harm. Plaintiff alleges that he attempted to inform Defendants of a substantial risk of harm through writing letters, requesting transfers, and filing grievances. However, he has not alleged sufficient facts to support the inference that all of the Defendants had enough specific information to establish constitutional liability.

Plaintiff has explicitly described informing the following individuals of his plight, meaning they had knowledge of the risk of harm: Williams, Farllow, Thomas, Wilcox, and Ward. As to the other officials, Plaintiff fails to state a claim that they had any knowledge of the risk. Specifically, Plaintiff makes no allegation that he informed Defendant Adams or White about Jordan's threats. It appears that Plaintiff wishes to impute the knowledge of officials who handled or mishandled his grievances to Defendants Adams and White, but that is impermissible. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003) (abrogated in part on other grounds

by *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)); *see also, e.g., Burnette v. Taylor*, 33 F.3d 1325, 1331 (11th Cir. 2008) (to determine deliberate indifference each defendant "is judged separately and on the basis of what that person knows."). Accordingly, his claims against Defendants Adams and White should be dismissed. As against Defendant Radar, Plaintiff merely alleges he is liable for failing to remove Jordan from the dorm after his assault of another inmate, Mitchell. Plaintiff has not claimed that Radar had any reason to suspect that Jordan would assault him or anyone else, but simply that he was seen returning Jordan to his cell after the altercation. Thus, claims against Radar should be dismissed as well.

Upon alleging that an official had the requisite knowledge or risk, Plaintiff must allege that the official was deliberately indifferent to that risk. "Prison officials are not constitutionally liable for their negligent, and even civilly reckless, violations of a prisoner's Eighth Amendment rights." *Mosley v. Zachery*, 966 F.3d 1265, 1276 (11th Cir. 2020). A prison official violates the Eighth Amendment if he responds to a known risk "in an objectively unreasonable manner." *Rodriguez*, 508 F.3d at 620 (quoting *Cottone*, 326 F.3d at 1358). An official responds to a known risk

in an objectively unreasonable manner if "he knew of ways to reduce the harm but knowingly declined to act" or if "he knew of ways to reduce the harm but recklessly declined to act." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995). Even though Plaintiff plausibly alleged the requisite culpable state of mind factor as to Farllow, he makes no allegation that Farllow was indifferent to the risk. In fact, he specifically alleges that Farllow investigated the assault incident and assisted Plaintiff in pressing charges against Jordan. Therefore, claims against Farllow should be dismissed.

The remaining Defendants include Williams;[2] Thomas, Wilcox, Ward, Shepherd, and the GDC. With regard to the GDC and Wilcox, Plaintiff's primary concern appears to be the "obsolete" grievance system in place which is tenably related to Plaintiff's deliberate indifference claim in that the grievance might have provided an avenue for knowledge of risk of harm. An allegation that an official who knew of a significant risk of harm to Plaintiff, rejected Plaintiff's right to grieve and thus to

---

[2] The Court's prior R&R, doc. 16, which screened Plaintiff's first Complaint, also found allegations against Williams sufficient to state a claim. However, as noted to Plaintiff, the Court's present R&R is based solely upon allegations stated in his Amended Complaint, doc. 18, which superseded his first Complaint, doc. 1. *See* doc. 16 at 11 (citing *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006)

seek protection from the asserted risk of harm—thereby disregarding that risk—*may* state a deliberate indifference claim against the person who rejected the grievance.  However, "a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure." *See, e.g., Thomas v. Warner*, 237 F. App'x 435, 437-38 (11th Cir. 2007); *see also Wildberger v. Bracknell,* 869 F.2d 1467 (11th Cir. 1989) (*per curiam* ) (affirming that violation of grievance procedure did not rise to the level of constitutional violation).  Thus, while Wilcox may be liable for ignoring and rejecting Plaintiff's concerns, GDC cannot be liable for failing to maintain a grievance procedure.[3]

It is unclear whether, at this stage of litigation, Wilcox actually ignored any threat, as Plaintiff's claim is merely that Wilcox accused him of lying and initially prevented him from completing his grievance which purportedly alerted officials as to the ongoing threat against him.  *See* doc. 18 at 22-23.  Plaintiff's complaint was filed while the purportedly ongoing risk of attack was looming, but Plaintiff is not required to have

---

[3] In fact, GDC is an agency of the state and is not a "person" that may be sued under § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *see also Zellars v. Clarke Cnty. Sheriff's Dep't.*, 2008 WL 5076334, at *1 (M.D. Ga. Nov. 25, 2008) ("Because the Georgia Department of Corrections is an agency of the state, it is not a 'person' that may be sued under § 1983."); *Darrough v. Allen*, 2013 WL 5902792, at *3 (M.D. Ga. Oct. 8, 2013).

already been beaten to state a claim.  *See Helling v. McKinney*, 509 U.S. 25, 34 (1993) (citing *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980) for the proposition that "a prisoner need not wait until he is actually assaulted before obtaining relief.").  Thus, construing the facts in his favor, as the Court must at this stage, to the extent Plaintiff alleges that Wilcox, by rejecting his grievance, was deliberately indifferent to the risk of him being attacked by Jordan and his gang, Plaintiff states a claim.

Lastly, although Plaintiff re-named Defendant Shepherd as Defendant No. 2 on his form complaint, he never mentioned him in his factual recitation of events, and therefore, he failed to state a claim against him.  *See Coleman v. Bowden*, 797 F. App'x 422, 427 (11th Cir. 2019) (Plaintiff failed to state a claim where he did not allege facts to show that supervisory official personally participated in, or directly caused, him to be attacked by his cellmate).  Likewise, the Clerk listed Defendant Brown on the docket because Plaintiff's initial Complaint mentioned him.  Plaintiff made no factual allegations against this individual in his superseding Amended Complaint, and thus claims against Brown should be dismissed.

16

Pursuant to the foregoing, Plaintiff has stated a claim against Williams, Thomas, Wilcox, Ward. Service shall issue against them. The Court **RECOMMENDS** that Defendants Radar; Farllow, Adams, White, Shepherd, Brown, and the GDC be **DISMISSED**. This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Meanwhile, it is time for plaintiff to pay his filing fee. His most recent PLRA paperwork reflects $0.00 in average monthly deposits over the six-month period prior to the date of his Prison Account Statement, and an average monthly balance of $0.00. Doc. 19. He therefore owes a $0.00 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall therefore set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.[4]

Since the Court approves for service Plaintiff's Eighth Amendment Claim against Defendants Williams; Thomas, Wilcox, Ward, a copy of Plaintiff's Amended Complaint, doc. 18, and a copy of this Order and Report and Recommendation shall be served upon them by the United

---

[4] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately. In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

States Marshal without prepayment of cost.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Order upon Plaintiff.  The Court also provides the following instructions to the parties that will apply to the remainder of this action.

### INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal.  Fed. R. Civ. P. 4(c)(3).  In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal service of summons.  Fed. R. Civ. P. 4(d); Local R. 4.5.  A defendant has a duty to avoid unnecessary costs of serving the summons, and any defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d).  Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date the marshal sent the request for waiver.  Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral

examination.  Fed. R. Civ. P. 30(a)(2).  Defendants are further advised the Court's standard 140-day discovery period will commence upon the filing of the last answer.  Local R. 26.1.  Defendants shall ensure all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any.  Defendants shall present such questions to the witness in order and word-for-word during the deposition.  Fed. R. Civ. P. 30(c).  Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

## <u>INSTRUCTIONS TO PLAINTIFF</u>

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action.  Local R. 11.1.  Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney).  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel.  Fed. R. Civ. P. 5.  "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."  Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from a Defendant, Plaintiff must initiate discovery.  See generally Fed. R. Civ. P. 26 to Fed. R. Civ. P. 37.  The discovery period in this case will expire 140 days after the filing of the last answer.  Local R. 26.1.  Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period.  Id.  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then

only to the extent necessary; and when needed for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  See Fed. R. Civ. P. 33.  Interrogatories may be served only on a **party** to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are **not named** as a defendant.  Interrogatories are not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per

22

page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for failure to prosecute.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant.  Upon no less than five days' notice of the scheduled deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order.  A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to

23

attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. Failure to respond shall indicate that there is no opposition to a motion. Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically

controverted by an opposition statement. If a Defendant files a motion for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be met by reliance on the conclusory allegations contained within the complaint. If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts. If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in the Defendant's affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED REPORTED AND RECOMMENDED,** this 18th day of March, 2024.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA